IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ANN THOMAS, ) | |
| ) | Civil No. 3:10-cv-1061 |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| DOLGENCORP, INC., ET AL., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on defendant's motion for summary judgment.[1] For the reasons stated below, the court grants defendant's motion.

## I.  BACKGROUND

Plaintiff Ann Thomas worked as a store manager at Dollar General from May 2003 until October 2008.  Since her position was salaried, Thomas was not paid additional wages based on over-time hours worked.  Thomas brings this suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, for unpaid overtime compensation.  Defendant Dolgencorp, Inc. (Dollar General) claims that it does not owe Thomas overtime because she was an exempt employee pursuant to the "executive exemption" provision of the FLSA.

Dollar General is a retailer of basic consumer goods.  Dollar General store managers report to a district manager who oversees a number of stores at the same time.  Dollar General operates its stores according to, among other things, certain standard operating procedures (SOPs).  Store managers are evaluated on store

---
[1] Dollar General Partners, Dolgencorp of New York, Inc., and Dolgencorp of Texas, Inc. do not join in this motion. Defendants anticipate that the parties will enter stipulations dismissing these defendants. Def.'s Mot. 1, n.1.

1

performance and leadership skills, including: sales volume, inventory shrink, safety awareness, training and development, controllable expenses, customer satisfaction, and merchandising.

Thomas testified that, as the store manager, she worked 55-60 hours a week, 40 of which she devoted to management duties. Thomas Dep. 38:23-25, 39:3-5, 39:9-10, Sept. 15, 2011. Thomas testified that she typically performed the following duties without a district manager's approval: hiring, id. 158:8-9, 150:24-152:1; promoting, id. 150:24-152:1; terminating, id. 158:10-23; supervising, id. 140:13-15; and disciplining employees, id. 158:6-7; and creating or modifying employees' schedules, id. 158:1-5. While Thomas testified that she did notify one district manager of her hiring, firing, disciplining, and promoting choices before she acted, she said that the district manager did not require prior notification, rather she notified him because he was "such a nag," and she "didn't want to have to deal" with his negative attitude. Id. 166:1-169:15. Thomas's district managers almost never had a problem with any of the choices she made. Id. 169:1-15. Thomas testified that when she was required to obtain approval for promoting or hiring employees, her recommendations were approved. Id. 126:1-128:10.

Thomas either performed or was responsible for performing the following duties: interviewing, id. 51:1-7; training, id. 183:14-15; evaluating, id. 172:4-22; and motivating employees, id. 174:13-15; counseling underachieving employees, id. 184:1-14; recommending employees' pay rates and advancements, id. 184:22-24; coordinating meetings and events to encourage safety, security, and compliance with store policies, id. 185:17-23; managing trends in her cashiers, sales, expenses,

performance, and the business as a whole, id. 174:12-19, 186:15-24; keeping track of the store's progress, id. 174:16-18; ensuring employee compliance with operating procedures, id. 191:1-10; ensuring that the store was appropriately staffed, opened, closed, and appropriately equipped, id. 186:2-14, 191:19-24; facilitating effective storage, stocking, and staging of merchandise, id. 187:16-19; maintaining accurate inventory and finances, id. 190:3-191:5; providing leadership in customer service, id. 191:6-8; and maintaining a safe and clean store, id. 191:14-18.

During the time Thomas worked as a store manager, she had four district managers. Thomas's district managers' visits to her store varied from one time a week to once every couple of months. Id. 155:6-25. The district managers would usually telephone on a weekly basis. Id. 162:5-9, 156:13-22. District managers set the total number of labor hours that could be worked at a store. Id. 269:2-7. Typically, Thomas was not supposed to authorize overtime, but if necessary, she could allow overtime without prior approval. Id. 273:23-274:13. Thomas could not set store hours, mark down amounts, store temperature, or employees' starting pay rate or raise amounts, or contract with outside vendors. Pl.'s Opp. 20. Thomas testified that she had very little choice over the design of her stores because 95% of the design was set by corporate planograms, except for the manager's choice section. Thomas Dep. 209:8-210:11; 240:21-25. At some time during Thomas's management tenure, replenishing merchandise at the store became automated. Id. 54:25-30. Additionally, at some point, corporate started sending prepopulated shift sheets, stating how many employees needed to be working at one time. Id. 193:17-25.

Thomas testified that these sheets were only a guide and that she could change them because she alone knew the circumstances at her store. Id. 194:8-18.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Anderson, 477 U.S. at 255.  If evidentiary materials eliminate all factual disputes, summary judgment is appropriate on questions of law.  Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

## III.  DISCUSSION

The FLSA, 29 U.S.C. § 207(a), requires that an employee receive overtime pay if he or she works more than 40 hours in any workweek, but exempts executive employees from this overtime pay requirement.  The FLSA overtime exemptions are

"affirmative defense[s] on which the employer has the burden of proof." Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974). The Department of Labor has, for the relevant period, promulgated two sets of regulations interpreting the scope of the executive exemption, one of which was applicable prior to August 2004, and the other thereafter. Since Dollar General employed Thomas as a store manager prior to and after these amendments, her claims are governed by both pre-2004 and post-2004 regulations.

Under the pre-2004 regulations, an employee was exempt under the executive exception when the employee earned more than $250 per week if (1) her primary duty consisted of the management of the enterprise and (2) included the customary and regular direction of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004). The post-2004 regulations state that an exempt employee: (1) is compensated at a rate of at least $455 per week; (2) has the primary duty of management; (3) customarily and regularly directs the work of two or more other employees; and (4) has the authority to hire or fire other employees or her suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a) (post-2004).

The parties have stipulated that both before and after August 2004, Thomas was paid over $455, which is over the pay threshold for an exempt employee. The parties also agree that Thomas customarily and regularly directed the work of two or more other employees. Furthermore, the record clearly demonstrates that Thomas had "the authority to hire or fire other employees or her suggestions and

recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a) (2004); see Thomas Dep. 150:24-152:1, 158:8-23, 248:19-249:10, 126:1-128:10.  Thus, the only remaining dispute before the court is whether Thomas's primary duty was management.

> Management duties include:
>
> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102(b) (2003).  Thomas was responsible for most of these tasks at her stores.

The post-2004 regulations define "primary duty" as the "the principal, main, major or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a) (2004).  "To determine whether an employee's primary duty is management, [courts should] look to the character of the employee's job as a whole, focusing on five factors outlined by the pre-2004 regulations:  (1) the amount of time spent performing managerial duties; (2) the relative importance of these managerial duties; (3) the frequency with which the employee exercises discretionary powers; (4)

the relative freedom from supervision; and (5) the relationship between the employee's salary and nonexempt employees." In re Family Dollar Litig., 637 F.3d 508, 514 (4th Cir. 2011) (citing 29 C.F.R. § 541.103 (2003)).[2]

**A. Amount of Time Spent Performing Managerial Duties**

Under both the pre- and post-2004 regulations, the court must analyze all of the factors, but the amount of time an employee spends on management versus non-management is a "useful guide," and a "good rule of thumb," to determine the employee's primary duty. 29 C.F.R. § 541.103 (2003); 29 C.F.R. § 541.700(b). That is, an "employee who spends over 50 percent of his time in management" "generally" has "management as his primary duty." 29 C.F.R. § 541.103 (2003); 29 C.F.R. § 541.700(b).

Thomas testified that she generally spent 70% of her time doing managerial work and 30% of her time doing nonmanagerial work.[3] Thomas Dep. 268:2-24. Furthermore, Thomas agreed that even when she was performing non-managerial duties, she was always "in charge" of her store and responsible for its overall operation. Id. 226:6-228:24; 256:10-17. Even without considering whether Thomas concurrently managed her store while she performed non-managerial duties, Thomas spent well over half of her time performing management duties. Employees who spend over 50% of their time completing management duties, "generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b) (2004).

---

[2] The Sixth Circuit has held that while the moving party must establish each element of an executive exemption, they need not establish every factor of the element for the element to be satisfied. Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 505 n.6 (6th Cir. 2007).
[3] Thomas noted the percentage of time she spent performing managerial duties fluctuated. Some days she spent 50% of her time performing management duties, other days she spent 100% of her time performing management duties. Thomas Dep. 267:21-25.

### B. Relative Importance of These Managerial Duties

Thomas believed her most important duty was to hire, train, and develop her employees because having the right team in her store had the biggest impact on ensuring the success and profitability of her store. Thomas Dep. 248:19-249:10, 232:24- 233:242. She also testified that if she did not perform her managerial duties, her store would not exist. Id. 229:5-21. Additionally, Thomas explained that even when she was performing non-managerial tasks, she chose the task that would make her store more profitable, and that if she couldn't improve her store, there was no need for her to be there. Id. 224:15-23, 230:14-24; 232:24-233:2. Thomas used the majority of her time to complete her managerial tasks because these were the bulk of her responsibilities *and* were her most important responsibilities. If she failed to perform her managerial duties, there was no one else to assign and supervise the non-managerial tasks, and the store, "would not exist." Id. 229:5-21.

### C. Frequency With Which the Employee Exercised These Duties

Thomas exercised almost total discretion on a daily basis. She had discretion in whom to hire and whom to fire. She initially set and later adjusted her employees' schedules. Id. 158:2-5, 192:25-194:22, 196:1-6, 273:22-274:14. She chose which employees needed to be disciplined or counseled and determined the most suitable method to that end. Id. 183:25-184:4. Thomas used her own judgment in choosing how to spend her time and by determining who did what task and when in her store. Id. 224:15-226:5. Like the plaintiff in Family Dollar, "it is apparent that she exercised discretion virtually every day and all day long. Every one of the day to day tasks involved judgment and discretion." 638 F.3d at 517.

Thomas's district managers rarely interfered with Thomas's discretion. Thomas had four different managers while she worked for Dollar General. One district manager, Mr. Kotula, visited the store only one or two times a month, and then only for about 30 minutes at a time, conducted weekly telephone calls, and did not interfere with the way she ran the store. Id. 155:5-22, 156:5-12. Thomas saw another, Mr. Block, "maybe five" times a month, and that he would stay between 30 minutes to an hour at the store, but that he did not "micro-manage" her. Id. 162:5-12. Even Mr. Block, Thomas's most difficult district manager, did not interfere with how she ran the store, except for how she designed the planograms, and she testified that he would do it her way in the end. Id. 162:17-164:5. Thomas could not remember any specifics about her third district manager, since he did not manage her for very long. Id. 169:16-23. Thomas's fourth district manager visited her store just once during the three months that he was her district manager. Id. 169:24-170:10.

"[A]ctive supervision and periodic visits by a [district] manager do not eliminate the day-to-day discretion of the on-site manager." Murray v. Stuckey's Inc., 50 F.3d 564, 570 (8th Cir. 1995). Thomas's managers were much less "active" than in other cases where courts found that a store manager's primary duty was management. See, e.g., Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 506 (6th Cir. 2007). Thomas's managers were not constantly looking over her shoulder and rarely interfered with the way she wanted to run her store. On a daily basis, she exercised almost unfettered discretion in managing her store.

Furthermore, Thomas's discretion was not overly limited by Dollar General's SOPs. 29 C.F.R. § 541.704 (2004) states, "The section 13(a)(1) exemptions are not

available, however, for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances." However, notwithstanding extensive SOPs, courts have found that "[t]he supervision of other employees is clearly a management duty. The fact that [the employer] has well-defined policies, and that tasks are spelled out in great detail, is insufficient to negate this conclusion. Ensuring that company policies are carried out constituted the very essence of supervisory work." Donovan v. Burger King, 672 F.2d 221, 226 (1st Cir. 1982) (finding that assistant managers, whose tasks were "governed by highly detailed, step-by-step instructions contained in" the company manual that "admit of little or no variation" had management as their primary duty); see also Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1115 (9th Cir. 2001) ("[E]nsuring employee compliance with a management manual qualifies as supervision for the purposes of the regulations.").

While Dollar General's SOP manual is extensive and Thomas often referred to it, Thomas Dep. 89:12-18, she had almost total discretion in the manner in which she supervised her employees, made personnel choices, prioritized tasks to ensure utmost profitability, trained her employees on the SOP policies, and ensured that those policies were followed, id. 91:4-94:1, 226:19-21, which is "the very essence of supervisory work." Burger King, 672 F.2d at 226. A company's "desire for standardization and uniformity" in its "multi-store organization" does not take away from the fact that a manager's primary duty is to manage her store. Murray v. Stuckey's Inc., 939 F.2d 614, 619 (8th Cir. 1991). While Dollar General's policies

furthered "standardization and uniformity," Thomas almost always exercised a high degree of discretion in her work.

### D. Relative Freedom From Supervision

Thomas was relatively free from supervision almost all day every day. She was the most senior employee at her store, and no other on-site employee was her equal. As discussed above, district managers visited her store infrequently, allowing Thomas to operate her store without any supervisor looking over her shoulder. In fact, when Thomas discussed two of the three district managers she could remember, she said that they did not interfere with the way she wished to run the store. Id. 156:5-12, 162:17-164:5 While these district managers did visit her store occasionally, and her discretion was limited in some ways by the SOPs, the exemption only demands "'*relative* freedom from supervision;' it does not demand complete freedom from supervision." Speedway, 506 F.3d at 507 (holding that store manager was relatively free from supervision even when her district manager visited her store once or twice a week, communicated with the plaintiff frequently over the phone and email, and remained constantly available); Horne v. Crown Cent. Petroleum, Inc., 775 F. Supp. 189, 191 (D.S.C. 1991).

### E. Relationship Between the Employee's Salary and Nonexempt Employees' Pay

Courts consider "two items" when evaluating the relationship between the employee's salary and nonexempt employees' pay, "first, whether the manager earned more, in absolute terms, than nonmanagerial employees, and second, whether the manager was a 'profit center,' namely, whether the manager had the ability to influence the amount of her compensation." Family Dollar, 637 F.3d at 517.

11

Considering the number of hours Thomas estimated she worked to determine her "hourly rate," Thomas was, "in absolute terms," paid more than her non-managerial employees. Thomas received approximately 10-30% per hour more than the assistant manager at her stores during the duration of her employment as store manager. See Pl.'s Opp. 9. In Family Dollar, the Fourth Circuit compared the store manager's salary to the "average employee." Thomas's second in command is certainly not the "average employee,"[4] however, even using the assistant manager as the sole basis of comparison, Thomas was unquestionably paid more.

Furthermore, Thomas was a profit center. Like the plaintiff in Family Dollar, Thomas's bonuses were dependent on her store's profitability. Thomas Dep. 75:25-76:13, 79:23-80:15. Thomas received $747 in 2005; $850 in 2006, $2,350 in 2007; and $550 in 2008. Id. 61:24-65:9. Thomas's assistant manager was only able to earn up to 30% of a store manager's bonus before 2005 and none thereafter. Id. 77:12-80:12. Thomas explained that she received bonuses when the assistant manager did not because she was the most responsible person in the store and had the largest impact on the store's success. Id. 81:1-11.

Viewed as a whole, Thomas's testimony demonstrates that her primary duty was management. She was responsible for operating her stores profitably; she spent the bulk of her time performing managerial duties, received additional compensation based on her stores' performance, and understood her stores' improvement ultimately rested with her. Based on the foregoing, this court concludes that Thomas was an

---

[4] Plaintiff argues the court should not consider the wages of the other employees at the Dollar General because they were part time. A comparison to these employees reveals a difference of 18-38% in pay.

"exempt employee" under the FLSA, and Dollar General does not owe Thomas overtime compensation for the period of time she worked as a store manager.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant's motion for summary judgment.

**AND IT IS SO ORDERED**.

---
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**April 3, 2012
Charleston, South Carolina**